**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DEANTE GHOLSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:17-CV-479 (MTT)** |
| | ) | |
| **WILLIAM POWELL, _et al._,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

United States Magistrate Judge Charles H. Weigle recommends denying Plaintiff

Deante Gholston's motion for summary judgment and granting in part and denying in

part the Defendants' motion for summary judgment such that Gholston be permitted to

proceed to trial on his claims against Defendant William Powell and the current Georgia

Diagnostic and Classification Prison ("GDCP") chaplain[1] under the Religious Land Use

and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, _et seq._  Doc. 36.

Both Gholston and the Defendants have objected to the Recommendation and

responded to each other's objections.  Docs. 38; 40; 41; 42.   Pursuant to 28 U.S.C. §

636(b)(1), the Court has reviewed _de novo_ the portions of the Recommendation to

which the parties object.  After review, the Court accepts and adopts the findings,

---

[1] Gholston originally named prison chaplain John Muhammad as a Defendant.  Docs. 1; 8.  Muhammad is no longer the GDCP chaplain, and the United States Magistrate Judge directed the Defendants' counsel to provide the Court with the name of his successor.  Doc. 36 at 2.  Counsel has notified the Court that Henry Miller is serving as supervising chaplain for GDCP.  Doc. 39.  Pursuant to Fed. R. Civ. P. 25(d), Miller is automatically substituted for Muhammad.  The Clerk of Court is **DIRECTED** to remove Muhammad from this action and list Henry Miller, supervising chaplain, as a Defendant.

conclusions, and recommendations of the Magistrate Judge. The Recommendation, Doc. 36, is **ADOPTED** and made the Order of the Court.

## I. BACKGROUND

Plaintiff Deante Gholston is an inmate in the Special Management Unit ("SMU") at GDCP. Doc. 25-3 at 3. Gholston wants to grow shoulder-length hair and a beard that is at least palm-length.[2] Doc. 8-1 at 2-3. His desire to do so is rooted in his religious beliefs and desire to follow the prophet Muhammad. Doc. 38 at 1.

The Georgia Department of Corrections ("GDC") has a standard operating procedure ("SOP") that limits male prisoners' hair to three inches in length and their beards to one-half inch in length ("grooming policy").[3] Doc. 25-19. GDC also has a SOP that provides religious accommodations for "any special religious grooming requests beyond the requirements of its grooming policy" ("religious accommodations policy").[4] Doc. 25-20.

On March 25, 2017, Gholston applied for a religious accommodation to grow his hair and beard. Doc. 25-3 at 11. This request was "returned to him unprocessed."

---

[2] It is unclear just how long a palm-length beard is. In *Smith v. Dozier*, 2019 WL 3719400, at *1, 8 (M.D. Ga. 2019), a Muslim inmate sought to grow a fist-length beard. Based on case law, the Court found this to be a three to four-inch beard. *Id.* (citations omitted). The Court likewise finds that a palm-length beard would be approximately three to four inches in length.

[3] SOP 228.02 (IV)(E)(2)-(4), entitled "Facility/Center Barber/Cosmetology Shops" provides that all male prisoners, unless authorized otherwise through the Religious Accommodations SOP, shall have "[h]air not longer than three (3) inches" and a beard of not more than one-half inch. Doc. 25-19 at 7.

[4] SOP 106.11 provides religious accommodations for "[a]ny special grooming requests beyond the requirements of SOP No. 228.02." Doc. 25-20 at 2. A prisoner must obtain a Special Religious Request form from his counselor, complete the form in full and return it to the counselor. *Id.* at 2. The counselor forwards the form to the Facility Chaplain. *Id.* at 3. The form is then reviewed by the "Warden, Regional Director, Field Operations Director or Designee, Director of Chaplaincy Services, and General Counsel to ensure consistency, continuity, and constitutional compliance. The Field Operations Director/Designee, Director of Chaplaincy Services and General Counsel/Designee may meet as a panel to review the request and issue a decision." *Id.* The entire review process must be completed within thirty days from the date the counselor receives the prisoner's "original request." *Id.*

Doc. 27-1 at 1.  The Defendants acknowledge they did not adhere to the approval process required by the religious accommodations policy.  Doc. 25-3 at 11.  Gholston was instructed to complete a second request, which he did on August 28, 2018.  *Id.*  His second request was denied on November 20, 2018 because of Gholston's "history of possessing escape tools and weapons, including items concealed on his body."  Doc. 25-21 at 1.

Gholston filed the current action against William Powell, the Deputy Warden of Security at GDOC; James Smith, a "special agent" responsible for processing grievances; and John Muhammad, the former GDCP chaplain.  Doc. 8-1 at 1-2.  He sought only injunctive relief and sued each Defendant in his official capacity.  *Id.* at 2; Doc. 29-1 at 1

Both parties moved for summary judgment.  The Defendants argued (1) they were not proper parties to the lawsuit, because they could not provide Gholston the relief he sought, Doc. 25-1 at 8-9; (2) Gholston does not have a sincere religious belief in growing his hair longer than three inches, *Id.* at 11-12; (3) GDC's grooming policy furthers compelling interests in maintaining security, safety, and order, minimizing the flow of contraband, reducing violence, aiding in the quick identification of inmates, and keeping inmates clean and hygienic, *Id.* at 12-25; and (4) GDC's grooming policy is the least restrictive means to further these compelling interests, *Id.* at 25-30.

Gholston argued summary judgment should be granted in his favor because (1) he has a sincerely held religious belief that requires shoulder-length hair and a palm-length beard, Doc. 27-1 at 1-2; (2) these sincerely held religious beliefs are substantially burdened by GDC's hair and beard length requirements, *Id.* at 4; and (3) the

Defendants failed to show the hair and beard length requirements are the least restrictive means to further any compelling governmental interest, *Id.* at 5-9.

The Magistrate Judge recommends granting Defendant James D. Smith's motion for summary judgment on the grounds that the record does not show any personal wrongdoing by Smith; Smith has no connection to the GDC's grooming or religious accommodations policies; Smith is incapable of providing Gholston any relief; and Smith's only involvement in the underlying conduct was the denial of a prison grievance. Doc. 36 at 5-7. To the extent that the initial screening order in this case noted distinct First Amendment claims, the Magistrate Judge recommended that such claims be deemed abandoned and dismissed. *Id.* at 3. Finally, he determined that as to both Plaintiff's hair-length and beard-length claims, genuine issues of material fact precluded summary judgment for either Gholston, Powell, or Muhammad (now Miller). *Id.* at 8-20.

For the following reasons, the Recommendation is **ADOPTED.**

## II.    DISCUSSION

### A.  CLAIMS BEFORE THE COURT

The United States Magistrate Judge recommends that any First Amendment claims be deemed abandoned and dismissed. In his complaint, Gholston expressly referenced only RLUIPA. Doc. 36 at 2. In their cross motions for summary judgment, the parties did not raise or litigate any First Amendment claims. *Id.* The parties have not objected to the Magistrate Judge's recommendation to dismiss any First Amendment claims. The Court accepts and adopts this recommendation, and any First Amendment claims are deemed abandoned and **DISMISSED**.

## B. PARTIES BEFORE THE COURT

The United States Magistrate Judge recommends granting summary judgment to Defendant James D. Smith.  Doc. 36 at 5-7.  Neither party has objected to this recommendation.  The Court accepts and adopts these findings and **GRANTS** Smith's motion for summary judgment.

Powell and Muhammad (now Miller) also moved for summary judgment on the grounds that they have no connection to the grooming policy or religious accommodations policy and are incapable of providing Gholston any relief.  Doc. 25-1 at 8-9.  The United States Magistrate Judge recommends denying their motion.  Doc. 36 at 4-8.  He found that both Defendants are connected to the religious accommodations policy because the procedure contemplates review by Miller, as the prison chaplain, and Powell as the "Warden/Superintendent."  Doc. 25-20 at 4.  The Magistrate Judge also found that Powell bears a connection to GDC's policy of forced shaves and haircuts.  *Id.* at 6 (quoting Doc. 25-21 at 1-2).   Powell and Miller objected to these findings.  Doc. 40.

The record supports the Magistrate Judge's findings that Miller and Powell have some connection to the religious accommodation policy.  Doc. 36 at 6.  But Powell and Miller argue the Magistrate Judge "failed to consider whether the parties can provide the relief that Gholston seeks: namely, that Gholston be granted a religious accommodation in contravention of GDC's policies."  Doc. 40 at 3.  Powell and Miller state that they have no "decision making authority over religious accommodations, the authority to amend GDC policies, or the authority to deviate from GDC grooming policies."  *Id.* at 4.  Miller states that he conducts the initial review of a religious accommodations request and provides only a recommendation, which may or may not be accepted by the Regional

Manager, Field Operations Director, Director of Chaplaincy Services, and General Counsel.[5] Doc. 40 at 5. According to Miller, "[t]here is no presumption that the other individuals must accept the chaplain's recommendation or that his recommendation will ultimately be the final result. Four other individuals have to approve the request before it can come to fruition for the inmate." *Id.* (citing Docs. 25-2; 25-20 at 7, 10).

Powell argues there is no support for the Magistrate Judge's finding that he is "'in practice . . . the superintendent, and that Powell 'ran [the] GDCP . . . as if he was the superintendent who has [a] part in [the] religious accommodation [process].'" Doc. 36 at 6 (quoting Doc. 29-1 at 6). While the parties disagree as to Powell's role and responsibility, the record supports this finding. Doc. 29-1 at 6 (stating that Powell "in practice was [the] superintendent"). Powell argues even if this is true, the record shows that the Warden/Superintendent does not have the final authority to grant or deny a religious accommodation. Instead, just like the chaplain, he makes only a recommendation.

Though the Defendants' statements regarding who must approve a religious accommodations request are conflicting, there is support in the record for Miller and Powell's argument that they lack decision-making authority over the religious accommodations policy, at least when that policy's required procedures are followed. Their lack of authority is demonstrated by what transpired when Gholston submitted his

---

[5] The Defendants' evidence contains conflicting information regarding who must actually approve a prisoner's request for a religious accommodation. In the Defendants' Statement of Undisputed Material Facts, they indicate that "[a] request for a special religious accommodation must be reviewed **and approved** by the Facility Chaplain, Warden, Regional Director, Director, Field Operations or Designee, Director of Chaplaincy Services, and General Counsel." Doc. 25-2 at 2-3 (emphasis added). One paragraph in the Affidavit of Ahmed Holt provides that "a special religious accommodation must be reviewed **and approved** by the Facility Chaplain. . . . Doc. 25-3 at 10. But another paragraph indicates that "[e]ven as chaplain, he, alone, could not approve religious accommodation requests, but could only make a recommendation." Doc. 25-3 at 25.

second request for a religious accommodation. Both the Facility Chaplain and the Warden/Superintendent approved his request. Doc. 25-21. Gholston's request was, however, ultimately denied because the Regional Manager, Facility Operations Director/Designee, Director of Chaplaincy Services, and General Counsel/Designee disapproved the request. *Id.* Thus, it seems when the Defendants adhere to the approval procedure called for in the religious accommodations policy, Miller and Powell do not have the authority to grant Gholston's religious accommodations request to grow a palm-length beard or shoulder-length hair.

But there are allegations that the approval process required by the religious accommodations policy is not adhered to. Defendants admit that the approval process was not followed when Gholston made his first request for a religious accommodation on March 25, 2017. Doc. 25-3 at 11. Gholston states that his request was "returned to him unprocessed, along with Chaplain Muhammad's [Miller's predecessor] opinions and wrong understanding of the religious practice." Doc. 27-1 at 1. Thereafter, according to Gholston, he met with both Powell and the chaplain and they opposed his request "due to their opinions of the religion. . . ." *Id.* Thus, Gholston states these two Defendants have personally participated in denying him the proper process required by the religious accommodations policy. Doc. 29-1 at 5. Gholston has also provided additional evidence showing a later November 2018 request for religious accommodations was not processed in a timely manner. Doc. 34-2 at 2. In short, Gholston states the approval process required by the religious accommodations policy is "a farce" that is routinely ignored by Miller and Powell. Docs. 38 at 3; 27-1 at 7.

The Court finds that Powell and Miller should not be dismissed because: (1) they are connected to the religious accommodations policy; (2) there is conflicting information in the record regarding who must approve a prisoner's religious accommodations request; (3) Miller's predecessor and Powell were involved in the denial of Gholston's first religious accommodations request when the approval procedure was not followed; and (4) there are allegations the approval procedure is routinely ignored.

Additionally, the Magistrate Judge found that Powell bears a connection to the grooming policy because he has a "practice of ordering forced shaving," which may "fail[] RLUIPA's least restrictive means test." Doc. 36 at 7. Powell argues forced shavings are not his policy; instead they are "GDC policy," and he is "simply following instructions and must continue to do [so]." Doc. 40 at 6. The citations he provides, however, do not necessary support this statement. The grooming policy merely shows that offenders who do not adhere to the one-half inch beards and/or three-inch hair requirements "will receive disciplinary action." Doc. 25-19 at 8. It is unclear whether this disciplinary action necessarily includes forced shavings. The April 25, 2015 Policy Information Bulletin provided to all GDC Wardens and Superintendents shows that inmates who do not adhere to the one-half inch beard "will be given a Disciplinary Report." Doc. 25-19 at 35. Again, this does not mandate forced shavings.

Exhibits previously filed by Defendants show that "[i]nmates that fail to follow the grooming policies may be given verbal instructions to get into compliance, disciplinary reports, or be shaved in accordance with GDC's Use of Force Policy." Doc. 32-2 at 3. Importantly, the "[d]ecisions as to when an inmate is to be shaved in accordance with

GDC policy are made by the Warden or Superintendent of the facilities . . . ." Doc. 32-2 at 4. Gholston states that Powell, in practice, acts as the superintendent of the GDCP and that he has ordered Gholston to be shaved. Doc. 29-1 at 6; 25-25 at 20, 40-41. Thus, the record supports the Magistrate Judge's finding that Powell could possibly control if, or when, Gholston is forcibly shaved or forced to have his hair cut.

There is an additional reason for allowing this action to go forward with Powell and Miller as the named Defendants. The only "appropriate relief against a government" authorized by RLUIPA is injunctive or declaratory relief. 42 U.S.C. § 2000cc-2(a); *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Gholston sued state actors in their official capacities only and requested only injunctive relief. Doc. 8-1 at 2. The law recognizes that when state actors are sued in their official capacity for injunctive relief, the real party in interest is the state itself. *See Miller v. King*, 384 F.3d 1248, 1264 n.16 (11th Cir. 2004), *vacated and superseded on other grounds* by 449 F.3d 1149 (11th Cir. 2006) ("[I]n an official-capacity suit for injunctive relief, the real party in interest is the government entity. Thus, a suit against a state official in his or her official capacity is in effect against a 'public entity' . . . ."). This suit is, in effect, a suit against GDC.

While the Defendants maintain they cannot provide Gholston the relief he requests, the remedy for failure to join necessary parties is not dismissal of the action. Fed. R. Civ. P. 21. Instead, opportunity should be given to bring in any necessary party. The failure to join an indispensable party may require dismissal, but only if the party cannot be joined in the action. Fed. R. Civ. P. 19. If Powell and Miller, both of whom are sued in their official capacities, cannot provide relief to Gholston, counsel should

move under Fed. R. Civ. P. 19 to join the party or parties that can. The Court can also sua sponte add an indispensable party. Fed. R. Civ. P. 19(a)(2). *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) (finding that a court with proper jurisdiction may *sua sponte* consider the absence of a required party). The Court will address adding any necessary or indispensable parties prior to trial should Powell and Miller stand by their argument that they are unable, in their official capacities, to provide Gholston any relief if he prevails on his RLUIPA claims,

## C. ANALYSIS OF CLAIMS

### 1. Gholston's motion for summary judgment

The Magistrate Judge found that genuine issues of material fact precluded summary judgment for Gholston's RLUIPA hair and beard length claims. Doc. 36 at 8. He stated that a reasonable factfinder might conclude Gholston's history of violence and contraband and weapon possession while in prison renders the GDC's denial of Gholston's religious accommodations to the grooming policy the least restrictive means of furthering the prison's compelling security interests. *Id.* Gholston states that the Recommendation contains several "misunderstandings," Doc. 38 at 1, and while he thinks he "should really be granted summary judgment," *Id.*, he "agrees that the case should proceed to trial." Doc. 38 at 1.

To clean up the "misunderstandings," Gholston states: (1) he wants to grow his hair and beard solely to follow the Prophet Muhammad, not because GDCP officials fail to follow the grooming policy, *Id.* at 1; (2) he is only "violent with people who are violent with him"; (3) he was force-shaved on July 26, 2019 simply for the purpose of

harassment and retaliation,[6] *Id.*; (4) other violent and escape-prone inmates in the SMU at GDCP have long beards and long hair, *Id.*; (5) he has no desire to escape the SMU and only kept weapons and hand-cuff keys during a time when officers were routinely assaulting SMU inmates, *Id.* at 2; (6) he has never hidden anything in his beard, *Id.*; (7) he is in a one-man cell, so his hair and beard would pose no health or sanitation threat to other inmates, *Id.*; (8) he is already strip-searched every time he leaves his cell, *Id.*; (9) the same contraband that could be hidden in a three-inch beard could be hidden in hair that has grown three inches from one's head, which is already allowed under the grooming policy, *Id.* at 3; (10) GDC's security concerns are exaggerated, *Id.*; and (11) GDC officials are "still violating [the] special religious request policy and it's a farce," *Id.*

To the extent these are construed as objections to the Recommendation, they are overruled. They provide no basis for the Court to reject the Magistrate Judge's determination that the record, when construed in the light most favorable to the Defendants, could support a finding that GDC's grooming policy and the denial of Gholston's requested religious accommodations satisfy RLUIPA's least restrictive test. As Gholston himself acknowledges, he is an extremely dangerous and violent inmate. Docs. 25-2; 25-25 at 4, 17. He readily admits to "[c]utting officers [and] jumping on officers." Doc. 25-25 at 4. He has: (1) set fire to a cell, Doc. 25-3 at 4; (2) hidden handcuff keys and weapons on his person, *Id.* at 4-7; (3) cut officers with a razor blades, *Id.* at 4; (4) struck officers, *Id.* at 5-7; (5) threatened officers, *Id.* at 8; (6)

---

[6] This is an action for violation of RLUIPA. Retaliation is not an element of, or an issue under, RLUIPA. The Court understands Gholston's argument that GDCP's selective enforcement of the three-inch hair and one-half inch beard requirements show that the restrictions are not necessary or that they are not the least restrictive means of achieving GDC's compelling interests in security, hygiene, identification, etc. But, to the extent Gholston seeks to raise a separate claim for retaliation, he must administratively exhaust the claim and file a separate action raising the claim.

tampered with fire safety equipment, *Id.* at 8; (7) habitually projected bodily fluids onto officers, *Id.* at 9; and (8) pleaded guilty to obstructing duties of officers, insubordination, or failure to follow instructions on twenty-six different occasions, *Id.* at 30. Moreover, Gholston apparently has no intention of changing: "Am I gonna [sic] cut an officer or try to stab an officer, jump on an officer again? I might." Doc. 25-25 at 34.

RLUIPA requires a "focused inquiry." *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015) (quotation marks and citations omitted). The "individualized, context specific inquiry . . . requires the GDC to demonstrate that application of the grooming policies to [Gholston] furthers its compelling interests." *Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017). Given Gholston's history, a reasonable fact finder could conclude that GDC's grooming policy and denial of Gholston's request for religious accommodations were the least restrictive means of furthering GDC's compelling interest in prison security and safety. Thus, after a de novo review, the Court finds the Magistrate Judge correctly concluded Gholston was not entitled to summary judgment.

### 2. Powell and Miller's motion for summary judgment

The Magistrate Judge found that Powell and Miller were not entitled to summary judgment, because (1) Gholston created a genuine issue as to whether GDC's grooming policy substantially burdens his sincerely held religious beliefs, and (2) Defendants have failed to prove as a matter of law that the grooming policy meets the least restrictive means test. Doc. 36 at 14-20.

The Defendants do not object to the Magistrate Judge's determination that Gholston's sincerely held religious desire to grow longer head and facial hair is substantially burdened by their grooming policy. They do, however, object to the

Magistrate Judge's finding that they have not shown the grooming policy is the least restrictive means of furthering compelling governmental interests. Doc. 40 at 7-20. Defendants make four arguments: (1) the Magistrate Judge failed to afford the proper weight to the undisputed evidence, "specifically as it relates to the application of the grooming policies to Gholston, a violent and dangerous individual," Doc. 40 at 2; (2) the Magistrate Judge "erred in not considering the full picture as to why GDC's grooming policy is the least restrictive means to further its many compelling governmental interests," Doc. 40 at 14; (3) the Magistrate Judge erred when he relied on evidence not in the record concerning other jurisdictions, Doc. 40 at 2; and (4) the Magistrate Judge failed to accord the proper deference to prison officials' experience and expertise. Doc. 40 at 2.

### a. Gholston's violent and dangerous history

The Defendants argue the Magistrate Judge "gave little to no consideration of Gholston's violent and assaultive history and the risk he presents to the safety and security should he be able to deviate from GDC's grooming policies." Doc. 40 at 8. They fault the Magistrate Judge for considering evidence of Gholston's violent tendencies "only in the context of denying [Gholston's] Motion for Summary Judgment." Doc. 40 at 8 n.5.

While there are important disagreements,[7] everyone, even Gholston himself, agrees that he is a dangerous and violent inmate. The Magistrate Judge found that

---

[7] The Defendants have consistently maintained that following a December 24, 2017 cell fire, Gholston was searched and a key was found in his beard. Docs. 25-2 at 9; 25-4 at 4. They state, "[o]f particular concern to this lawsuit is that Gholston was recently discovered attempting to set fire to his dorm with inmates that had already escaped and killed correctional officers, and when strip searched, he was found with a handcuff key in his beard, and an eight inch shank taped to his leg." Doc. 25-1 at 23. A GDOC Incident Report corroborates the Defendants' version of this event. Doc. 25-4. Gholston, however, has consistently maintained that he has never hidden a key, or any other contraband, in his beard. Doc. 27-1

Gholston is "highly dangerous"; he has "numerous convictions for infractions such as possession of weapons, starting fires, injury to self or other inmates, and injury to officers"; and he has possessed escape tools. Doc. 36 at 8-16. While the Magistrate Judge presented most of these findings when he recommended denial of Gholston's motion for summary judgment, there is no indication that he ignored this evidence when addressing the Defendants' motion for summary judgment. Doc. 36 at 16

It must be noted that Gholston is not an anomaly among the SMU population. According to the Defendants, at least eighty percent of all the inmates housed in SMU are considered "a threat to the safe, orderly operation of GDC facilities." Doc. 25-2 at 22. Defendants state that the SMU "houses the offenders who commit, or lead others to commit violent, disruptive, predatory, or riotous actions, or who otherwise pose a serious threat to the security of the institution." Doc. 25-3 at 3. Gholston states, and Defendants have not refuted, that many of these same inmates, even those with previous escape attempts, are allowed to have long hair and/or beards longer than one-half inch. Doc. 38 at 1.

The Defendants state that "Gholston presents grave security concerns, all of which could be exacerbated should he be allowed to grow his beard and hair longer than allowed by GDC policy." Doc. 25-1 at 22. But Gholston states that he has grown his hair and beard long on many occasions in the past. Doc. 27-1 at 5. He states he "has gone [a] year at times without shaving." Doc. 27-1 at 5. Additionally, he alleges that he went from December 2018 until July 2019 without a shave and "no one shaved

at 6-7; 29-1 at 4. He states that he hid the key in his mouth. *Id.* Gholston filed a December 24, 2017 Disciplinary Report that corroborates his version of events: "Gholston was searched and a homemade handcuff key was found in his mouth and a 8 inch homemade weapon fashioned from metal . . . strapped to his inner thigh." Doc. 29-7 at 2.

[him] or asked him to shave." Doc. 38 at 1. Gholston states that he never hid

contraband or weapons in his hair or beard. Doc. 27-1 at 6-7. If this is true, a

reasonable factfinder might conclude that the Defendants are exaggerating the risks

that Gholston would present to safety and security should he be granted his requested

religious accommodations to the grooming policy.

The Defendants take issue with the Magistrate Judge's finding that Gholston has

limited contact with other offenders. The Magistrate Judge found that "a reasonable

factfinder conducting a 'focused inquiry' could reasonably conclude that the GDC's hair

length limitations are unnecessarily restrictive given [Gholston's] limited opportunity for

contact with other prisoners." Doc. 36 at 17. Defendants argue this conclusion is not

supported by the record. Doc. 40 at 11. They point to several different incidents to

show "Gholston has access to other inmates and can and does interact with other

inmates": (1) a February 2012 assault of another inmate, Docs. 25-2 at 14; 40 at 11; (2)

a December 2017 setting fire to cell along with two other inmates, Docs. 25-2 at 8; 40 at

11; (3) the fact that the "whole dorm" talked about the fire incident before it occurred,

Docs. 25-2 at 8; 25-25 at 51; 40 at 11; and (4) on an undisclosed date, Gholston

obtained a razor blade from "another person" and cut an inmate who had threatened to

rape him, Docs. 25-25 at 39; 40 at 11.

These incidents[8] and all of the violent inmate-on-inmate contact shown in

Gholston's disciplinary history report, Doc. 25-5, occurred before his placement in

---

[8] Again, it is unclear when the incident shown in number four of the preceding paragraph occurred. Defendants cite "Doc. 25-5. p. 39." Doc. 40 at 11. Doc. 25-5 does not have a page thirty-nine; it consists of seven pages. They also cite "Doc. 29-1, p. 2," which is Gholston's brief in opposition to Defendants' motion for summary judgment. Doc. 40 at 11. Page two of the brief makes no mention of the razor blade assault.

Phase III of Tier III in November 2018. Doc. 25-3 at 4. It is unclear what contact Gholston has with other inmates since the placement change. Gholston states, and Defendants do not dispute, that he is housed in a single-man cell. Docs. 29-1 at 9; 38 at 2. According to Gholston, his contact with other inmates is limited, and he is thoroughly strip searched each time he exits his cell. *Id.* He states that every time he leaves his cell, he has to "strip down." Doc. 38 at 2. Thus, after conducting a de novo review, the Court agrees with the Magistrate Judge that a reasonable factfinder might conclude GDC's hair and beard length limitations are unnecessarily restrictive given Gholston's limited contact with other inmates and the searches he undergoes each time he leaves his one-man cell.

The Defendants argue that even if Gholston has limited contact with other inmates, there are no less restrictive alternatives that would reduce the risk of harm to correctional officers by Gholston or the risk of him possessing escape tools. Doc. 40 at 11. They maintain that if Gholston is allowed to deviate from the one-half inch beard and three-inch hair requirements, they will be required to manually search his hair and beard every time he leaves his cell. *Id.* at 12. The Defendants argue this is both time-consuming and dangerous. As for the time-consuming argument, the Defendants have not shown that a search of Gholston's beard or hair would add significantly to the time it takes to currently strip-search Gholston every time he leaves his cell. *See Benning v. Georgia*, 864 F.Supp.2d 1358, 1368 (11th Cir. 2012) (stating that a defense witness's general testimony that it would take "slightly longer to search inmates with 'long hair'" did not adequately "explain or quantify the burden this would place on GDC or its officers"). As for the danger, the Defendants state that a beard must be searched "face

to face with the inmate to physically manipulate the beard." Doc. 40 at 12. The Defendants do not, however, explain why this is the only method of searching an inmate's beard. Gholston states that he could vigorously frisk his beard and/or a metal detector could be used to check for metal in his beard. Plus, inmates' mouths must be searched for contraband, and presumably a guard must face the inmate during such a search. It is unclear why a search of an inmate's palm-length beard would be any more dangerous than a search of his mouth. In short, "[i]t is implausible to think that the searches that work for head hair, mouths, and other body parts cannot possibly work for beards as well." *Smith*, 2019 WL 3719400, at *4.

     b. <u>Least restrictive means</u>

The Defendants argue that the Magistrate Judge "erred in not considering the full picture as to why GDC's grooming policy is the least restrictive means to further its many compelling governmental interests." Doc. 40 at 14. The Defendants state that cost is a secondary reason why GDC's grooming policy is the least restrictive option. Doc. 40 at 15. They allege that safety and security are the primary reasons and that the Magistrate erred in failing to consider these reasons. The Court disagrees.

The Magistrate Judge noted that the Defendants "cited compelling interests in the form of prison security and order." Doc. 36 at 16. But the Magistrate Judge correctly found that summary judgment was inappropriate because the Defendants had not shown as a matter of law that GDC's grooming policy is the least restrictive means to further those interests. Doc. 36 at 16-20. The Defendants state that the Magistrate Judge should have recommended granting summary judgment because "Gholston did not present any viable alternatives that would address the safety and security concerns

GDC has with allowing him to grow a beard and long hair." Doc. 14 at 16. It is not up to Gholston to present "viable alternatives" to GDC's policies. Instead, RLUIPA requires GDC to show that "'it lacks other means of achieving its desired goal without imposing a substantial burden of the exercise on'" Gholston's religion. *Smith*, 848 F.3d at 980 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780 (2014)). The Defendants, at this stage in the litigation, have failed to meet this "exceptionally demanding" standard. *Holt*, 135 S. Ct. at 864. Thus, the Magistrate Judge correctly recommends denying their motion for summary judgment

The Defendants also argue that the Magistrate Judge erred in discounting their undisputed evidence that female inmates are less violent than male inmates and, therefore, GDC must treat male inmates differently than female offenders. Doc. 40 at 15. The Magistrate Judge did not erroneously discount this evidence. He noted that Eleventh Circuit case law supports the Defendants' argument that male prisoners are more violent than female prisoners and, therefore, the different hair lengths are generally appropriate for the different sexes. Doc.36 at 17 (citing *Knight v. Thompson*, 797 F.3d 934, 947 (11th Cir. 2015)). But he noted that Eleventh Circuit case law, specifically *Knight*, does not necessarily support the grant of Defendants' motion for summary judgment. *Id.*

*Knigh*t was decided not on a motion for summary judgment, but following a bench trial at which at least one witness testified regarding the threat posed by male prisoners versus female prisoners. 797 F.3d at 947. The Eleventh Circuit stated that it was "not the first court of appeals to uphold a grooming policy that treats male and female inmates differently when the record shows that there are valid reasons for the

different treatment." *Id.* Here, there may very well be "valid reasons" to treat Gholston differently from female inmates. *Id.* But it could be, as the Magistrate Judge found, that a reasonable factfinder may conclude that Gholston's severely restricted living conditions would allow GDC to satisfy its security concerns by applying the female grooming policy. Doc. 36 at 17-18. Defendants have not adequately addressed the interplay between Gholston's restricted living conditions (confinement in a one-man cell, potentially limited contact with other inmates, and strip searches every time he leaves the cell) and the application of the grooming or religious accommodations policies. A bench trial will allow the Court to make a "focused inquiry," to develop "factual findings, and an extensive record," regarding these matters. *Smith*, 848 F.3d at 981.

      c. <u>Evidence regarding other jurisdictions</u>

The Defendants argue that the Magistrate Judge erred in finding they had to address what other jurisdictions do and "disprove how other jurisdictions have been 'able to advance their security interests while also maintaining less restrictive hair length policies,' when there was no evidence either here or in any other case that jurisdictions are actually successfully advancing their security interests." Doc. 40 at 16. The Defendants state that Gholston did not raise this issue, and they, therefore, have no burden to disprove it. *Id.* Furthermore, they state that it is not clear that these other jurisdictions would actually allow for untrimmed hair or beards or that the less restrictive policies are actually successful. *Id.* at 17-18. Basically, the Defendants fault the Magistrate Judge for taking judicial notice of the proceedings in *Smith*, 2019 WL 3719400.

The Magistrate Judge did not err in taking "judicial notice of related proceedings and records before [the] [C]ourt" in *Smith*. *Fla. Bd. of Tr. of Internal Imp. Tr. Fund v. Charley Toppino & Sons*, Inc., 514 F.2d 700, 704 (5th Cir. 1975) (citations omitted). *Smith* had issues similar, and in some respects identical, to those in this proceeding. *Smith* involved a Muslim prisoner with a history of violence who sought a religious exemption from GDC's requirement that a prisoner's beard not exceed one-half inch. Specifically, Smith wanted to grow a fist-length beard. *Smith*, 2019 WL 3719400, at *8. The District Court originally granted the defendant's motion for summary judgment. *Smith*, 797 F.3d at 977-78. While Smith's appeal was pending, the Supreme Court decided *Holt*, and as a result, GDC modified its grooming policy to allow for a one-half inch beard. *Id.* at 978, 981. In light of these two developments, the Eleventh Circuit remanded the case. *Id.* at 981. Both parties moved for summary judgment, which the Court denied. *Smith*, 2019 WL 3719400, at *1. The Court determined that "Georgia is among a small minority of states that restricts beards to one-half inch or less and does not allow for any religious exemptions." *Smith*, No. 5:12-cv-26, Doc. 213 at 13. The Court declined to grant summary judgment for the defendant, in part, because it was not persuaded that "Georgia is meaningfully unique from other prisons and cannot effectively achieve its desired goals while having less burdensome policies . . . ." *Id.* at 14. In Gholston's case, the Magistrate Judge found that "[t]he same considerations weigh against an award of summary judgment for the Defendants in this case." Doc. 36 at 19.

While the Defendants correctly state that the practices of other states or institutions are not controlling, *Holt* instructs that "'the policies followed at other well-run

institutions would be relevant to a determination of the need for a particular type of restriction.'" 135 S. Ct. at 866 (citing *Procunier v. Martinez*, 416 U.S. 396, 414 n.14 (1974)). If many other prisons allow inmates to grow a three to four-inch beard or allow shoulder length hair, the suggestion is that GDC "could satisfy its security concerns through a means less restrictive than denying [Gholston] the exception[s] he seeks." *Id.*

In short, the Magistrate Judge did not err in taking judicial notice of the proceedings in *Smith* and in considering the policies at other institutions.[9]

### d. Deference to prison officials' experience and expertise

The Defendants complain that "[t]he Magistrate Judge did not give GDC prison officials the level of deference that RLUIPA requires." Doc. 40 at 18. They state that "GDC's grooming policies, decided by officials who deal with GDC's prison population and needs on an daily basis, ha[ve] been determined to be the only way GDC can accomplish its safety, security, [and] hygiene goals, within its budgetary and staffing realities . . . ." *Id.* at 19. The Defendants state that is especially true as to Gholston, who, along with two other inmates, was "found with handcuff keys in their beards, hair, or on their persons."[10] *Id.* at 19-20.

---

[9] The Court notes that after the Magistrate Judge entered the Recommendation in this this case, the Court decided *Smith.* It determined that "it is plausible that allowing a close security inmate like Smith an untrimmed beard could be dangerous for prison security." *Smith*, 2019 WL 3719400, *8. But GDC presented little evidence to show that a three-inch beard was a security concern. *Id.* "Thus, the Court [found] that allowing religious exemptions for inmates to grow three-inch beards is a reasonable less restrictive alternative of furthering GD[]C's compelling interests." *Id.* The Court ordered that GDC's grooming policy be modified to allow qualifying inmates (including Smith) to grow a three-inch beard, with "said exemption being subject to revocation based on the inmate's behavior and compliance with the revised grooming policy." *Id.* at *9. The Defendant has appealed and moved to stay the final judgment pending appeal. Docs. 247; 249. He argues that "[a] stay pending appeal is necessary to prevent the irreparable harm from allowing all GDC offenders with professed religious exemptions to have three-inch beards." *Smith*, 5:12-cv-26-WLS, Doc. 249 at 2.

[10] Again, it is clear that Gholston had a handcuff key somewhere on his person when he was searched on December 24, 2017. It is not clear whether that key was in his mouth or in his beard. Docs. 25-4; 29-7 at 2.

"Prison officials are experts at running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise." *Holt*, 135 S. Ct. at 864. RLUIPA, however, does not permit "unquestioning deference." *Id.* The Defendants have presented evidence to show that Gholston, like most of the other inmates in the SMU, is a violent, dangerous prisoner. *See* Doc. 25-5. They have also demonstrated that they have compelling security and safety interests. But *Holt* requires the Defendants "to prove that denying [Gholston's] exemption[s] is the least restrictive means of furthering [these] compelling governmental interest[s]." *Id.* This is an "'exceptionally demanding'" standard that "requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion . . . .'" *Id.* (quoting *Hobby Lobby*, 134 S. Ct. at 2780). Even affording the required deference, the Defendants have not made this showing as a matter of law. *Knight*, on which the Defendants rely heavily, does not require a different result, as it was decided not on summary judgment, but following a bench trial. 797 F.3d at 938-39.

### III.  CONCLUSION

After review, the Court accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge. Doc. 36. The Recommendation, Doc. 36, is **ADOPTED** and made the Order of the Court. Accordingly, any First Amendment claims mentioned in the initial screening Order, Doc. 14, are deemed abandoned and **DISMISSED**. The Defendants' motion for summary judgment, Doc. 25, is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendant Smith's motion for summary judgment is **GRANTED,** and he is dismissed from the action. In all other respects, the

Defendants' motion for summary judgment is **DENIED**.  Gholston's motion for summary

judgment, Doc. 27, is **DENIED**.   Gholston will proceed to trial on his RLUIPA claims.

      **SO ORDERED,** this 11th day of September, 2019.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT